## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EVAN WILES,** | **:** | |
| **Plaintiff** | **:** | **CIVIL ACTION NO. 3:20-1182** |
| **v.** | **:** | **(JUDGE MANNION)** |
| **PA DEPT OF CORR, _et al_.,** | **:** | |
| **Defendants** | **:** | |

## <u>MEMORANDUM</u>

### I. B<small>ACKGROUND</small>

Plaintiff, Evan Wiles, an inmate confined at the State Correctional Institution, Coal Township ("SCI-Coal Township"), Pennsylvania, filed the above caption civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). He complains of an incident that occurred at his former place of confinement, the State Correctional Institution, Huntingdon ("SCI-Huntingdon"), Pennsylvania. Id. Defendants are the Pennsylvania Department of Corrections and the following SCI-Huntingdon employees: Correctional Officers Walters, Cooper and Duval, Laundry Department Supervisor Hoops and Nurse Price. Id.

On October 16, 2020, Defendants filed a motion to dismiss Plaintiff's complaint. (Doc. 12). By Order dated November 12, 2020, Plaintiff was

granted until November 23, 2020 to file a brief in opposition to Defendants' motion to dismiss. (Doc. 15). On November 23, 2020, Plaintiff filed a "motion" to deny Defendants' motion to dismiss and a "brief in support of Plaintiff's opposition and reply to Defendants' motion to dismiss". (Docs. 16, 17). Plaintiff's "brief in support of Plaintiff's opposition and reply to Defendants' motion to dismiss" was construed and docketed as Plaintiff's brief in opposition.[1] (Doc. 16). Plaintiff's "motion" to deny Defendants' motion was deemed withdrawn by Order dated August 4, 2021. (Doc. 24). On August 12, 2021, Plaintiff filed a motion for relief from this Court's August 4, 2021 Order, in which this Court deemed Plaintiff's motion to deny Defendants' motion to dismiss as withdrawn, for Plaintiff's failure to file a supporting brief. (Doc. 26).

Since a motion to deny Defendants' motion to dismiss is not required, Plaintiff's "brief in support of Plaintiff's opposition and reply to Defendants' motion to dismiss" was properly construed, filed and docketed as Plaintiff's brief in opposition to Defendants' motion to dismiss. (Doc. 16). Consequently, Plaintiff's motion for relief from this Court's August 4, 2021 Order (Doc. 26) will be denied.

---

[1] Pursuant to Local Rule 7.6, any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief.

On December 4, 2020, Defendants filed a reply brief to Plaintiff's brief in opposition. (Doc. 18). Defendants' motion to dismiss is now fully briefed and is ripe for disposition. For the reasons that follow, the Court will grant Defendant's motion to dismiss.

## II. ALLEGATIONS IN COMPLAINT

Plaintiff claims that "between January and April of 2019, SCI-Huntingdon introduced 'strapless heel clogs' as the new visiting room footwear." (Doc. 1, complaint). He states that it is his belief that "the clogs were originally manufactured with heel straps and then removed in the Laundry Department under the supervision of Defendant Hoops and then delivered to the visiting room strip & search and clothing exchange area for the inmate population to wear during their visits." Id. Specifically, he claims that "Defendant Walters ordered that the heel straps be removed from the clogs." Id.

On March 2, 2019, Plaintiff "wrote a DC-135A Inmate's Request to Staff Form addressed to Defendant Hoops requesting that the unaltered visiting room footwear be made available to the inmate population to wear during their visits." Id. Defendant Hoops responded that he "would fix the issue." Id.

- 3 -

Also, on March 2, 2019. Plaintiff was "called for a visit." Id. He claims that "upon entering the strip & search and clothing exchange area, Defendant Duval issued Plaintiff a pair of 'strapless heel clogs'." Id. Plaintiff "expressed to Defendant Duval his safety concerns and his unwillingness to wear the pair of altered footwear" because "the straps were removed from heels and doesn't provide the support needed for Plaintiff's foot." Id. Defendant Duval asked Plaintiff if he had "an updated 'mobility impairment pass' from the Medical Department permitting Plaintiff accommodation to wear footwear with heel support." Id. Plaintiff informed Duval that he did not "have his 'mobility impairment pass' with him." Id. Defendant Duval "instructed Plaintiff to bring his 'mobility impairment pass' along with him when he have visits." Id.

On April 9, 2019, Plaintiff submitted an Inmate Request to Staff Form to Defendant Price, explaining that "Defendant Duval will not grant Plaintiff the accommodation to wear footwear with heel support unless Plaintiff have an updated 'mobility impairment pass'." Id.

On April 24, 2019, the Medical Department "scheduled Plaintiff for a physical examination where Nurse Brittany Everheart reissued Plaintiff an updated 'mobility impairment pass'." Id.

On September 29, 2019, Plaintiff was called for a visit. <u>Id</u>. He claims that "upon entering the strip & search and clothing exchange area, Plaintiff presented Defendant Duval with is updated 'mobility impairment pass' and requested that he be accommodated to wear footwear that provide heel support." <u>Id</u>. He alleges that Duval stated that "he doesn't have to follow a physician's recommendations and that he's not allowing Plaintiff to wear the footwear providing heel support because Plaintiff doesn't need foot support." <u>Id</u>. Plaintiff claims that Duval "ordered Plaintiff that he could either go to his visit wearing the footwear provided or return to the housing unit without a visit." <u>Id</u>. Plaintiff "followed Defendant Duval's orders and put on the pair of altered clogs that does not provide any heel and foot support." <u>Id</u>. Plaintiff claims that he "fell sustaining severe injuries to his foot & ankle area, leg and knee area and back side of his body." <u>Id</u>. Plaintiff states that his "injuries are a direct result of Defendant Duval forcing him to wear 'strapless heels clogs' causing Plaintiff to fall after his foot buckled underneath him." <u>Id</u>.

On September 29, 2019, plaintiff submitted a Sick-Call Request to be seen for the injuries he sustained in his fall. <u>Id</u>. In response, Plaintiff claims that he was "scheduled for a medical appointment where Plaintiff was given an x-ray, an ice-pack for swelling and prescribed Tylenol for pain." <u>Id</u>. Plaintiff was seen again on October 16, 2019, October 29, 2019 and November 20,

2019 for his injury, when he claims he "began recommended physical

therapy/rehabilitation sessions." Id.

On October 9, 2019, Plaintiff filed Grievance No. 829408 in which he

sought damages for "the blatant negligence on part of CO Duval and those

individuals responsible for the daily operations of the facility." (Doc. 1 at 11,

Official Inmate Grievance).

On November 3, 2019, Plaintiff's grievance was denied as follows:

Wiles: I received your grievance dated October 10, 2019,
concerning a visit that you had on September 29, 2019, in that,
you were required to wear the clog style footwear but believe that
you are medically cleared to wear footwear with a supported
back. Your request for relief is that you want the elimination of
the clog style shoes and $250,000.00

I spoke with you on October 3, 2019, concerning this issue. I
relayed to you that the visit processing officer was not wrong due
to the fact that when he contacted medical nothing is in your
records that indicated that special footwear was permitted.
However, when I spoke with several medical staff they could find
nothing in your medical records either but believe that you should
be approved some type of orthopedic insert or permitted
footwear with a supported back due to you condition. This would
have to be approved by medical and then forwarded to the
administration.

There is no evidence of policy violation or that staff acted
inappropriately. Therefore, your grievance is denied as well as
any requested relief.

(Doc. 1 at 13, Initial Review Response). Plaintiff filed an appeal to the

Warden on November 9, 2019, (Doc. 1 at 14, Appeal), who remanded the

grievance on December 16, 2019 "for additional review and appropriate response." (Doc. 1 at 16).

Effective December 21, 2019, Ms. Price placed an entry in Plaintiff's medical file which reads "must wear shoes with a back on to visits." (Doc. 1 at 27). The shift Commanders and visiting room staff were all made aware of Plaintiff's situation and were directed to have "size eight skippies available to [Plaintiff]." Id.

On December 23, 2019, Plaintiff's grievance was upheld, in part and denied, in part as follows:

> Wiles: I received your grievance dated October 10, 2019, concerning a visit that you had on September 29, 2019, in that, you were required to wear the clog style footwear but believe that you are medically cleared to wear footwear with a supported back. Your request for relief is that you want the elimination of the clog style shoes and $250,000.00.
>
> I spoke with you on October 30, 2019 and again on December 18, 2019, concerning this issue. I relayed to you that the visit processing officer was not wrong due to the fact that when he contacted medical nothing was in your records that indicated that special footwear was permitted. However, when I spoke with several medical staff they could find nothing in your medical records either but believe that you should be approved some type of orthopedic insert or permitted footwear with a supported back due to your condition. This would have to be approved by medical and then forwarded to the administration.
>
> There is no evidence of policy violation or that the visit process officer acted inappropriately. Therefore, your grievance is denied in part as well as any requested relief. However, upheld in part

- 7 -

due to your impairment was not entered properly in the medical records system.

(Doc. 1 at 17, Remanded Initial Review Response). On December 26, 2019,

Plaintiff filed an appeal to the Warden. (Doc. 1 at 18, Appeal).

In a Response dated February 4, 2020, Warden Kauffman upheld the

remanded initial review response, finding the following:

> In reviewing your grievance and appeal, I note that your concern with your functional limitation (footwear) was appropriately addressed by Captain Cooper. In your appeal, you claim the following: you claim you tried to explain to Captain Cooper that Officer Duval had been the regular visiting room officer for more than six months and is very familiar with your functional limitation of your foot, however, on numerous occasions he has challenged your special accommodation trying to force you to wear the altered clogs on visits and on several of those occasions he called medical staff. You further state that on this occasion it was the first time he eliminated your option to have safe footwear while on a visit. You further claim contrary to Captain Cooper's findings that you have a special accommodation documented in your medical record and it was properly entered into the system, therefore, given Duval's knowledge of your impairment and presenting the paperwork plus the clear deformity of your foot, adds up to blatant negligence. You claim Officer Duvall was overzealous and your functional limitation form from medical was blatantly ignored. You also ask, if Office Duval was not acting on his own capacity then you wish to know whose order it was to deny you the proper footwear which ultimately caused you physical injury. You are asking for the clogs to be removed from the institution plus monetary damages.

> In reviewing your initial grievance, I find Captain Cooper informed you that Officer Duval called medical to verify your medical status. It is his job to do so. Furthermore, when he called medical, medical staff could not find anything in your medical records stating you had a functional limitation. CHCA Price was

- 8 -

contacted to confirm as to whether or not this was your medical record. She explained that it was your record but unfortunately due to new software staff could not find it. At the time of your incident since staff could not verify your limitation, therefore, Officer Duval gave you clogs to wear, which are the footwear utilized in the visiting room. Officer Duval followed procedure by calling medical to ensure your limitation was still valid. He was told it was not. He was not acting on his own behalf but was misinformed, furthermore, since this incident staff have been informed of the proper way to find this information in the computer. You have also been given an updated functional limitation pass signed by the Shift Commander. Staff did not intentionally deny you the proper footwear, therefore, your grievance was denied in part. It was upheld in part because medical staff misinformed Officer Duval. If you have any issues with your foot or your functional limitation, I would suggest contacting the medical department for assistance.

In closing, I can only reiterate that I uphold the response provided by the grievance officer. Your grievance is found to be without merit and your request for money and the clogs removed are denied.

(Doc. 1 at 20, Facility Manager's Appeal Response). On February 20, 2020, Plaintiff filed an Inmate Appeal to Final Review. (Doc. 1 at 22). In a Final Appeal Decision dated April 28, 2020, Plaintiff's Grievance No. 829408 was upheld as follows:

You claim in your grievance that on 9/29/19 you had a visit and you were required to wear the clog style footwear but believe that you are medically cleared to wear footwear with a supported back. An investigation was conducted regarding your allegations. The record reflects that Officer Duval called to verify the information with medical and was told that you did not have a medical exemption. Therefore, he followed policy. The record reflects that your grievance was upheld due to the misinformation provided but denied in your requested relief. You provide no

- 9 -

additional information to change the outcome of the grievance. Any issues not mentioned in your initial grievance will not be addressed at final review. This office agrees with the responses you received.

(Doc. 1 at 24, Final Appeal Decision).

On July 7, 2020, Plaintiff filed the instant action, seeking compensatory and punitive damages[2] for the Defendants' alleged "deliberate indifference to health and safety by denying Plaintiff access to adequate medical care where prison officials refused to follow physician's recommendations." (Doc. 1 at 7).


## III. LEGAL STANDARDS

### A. Motion to Dismiss

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure

---

[2] To the extent that Plaintiff also seeks injunctive relief, his claim is moot as Plaintiff is no longer housed at SCI-Huntingdon. See Lanza v. Moclock, 842 F. App'x 714, 717 (3d Cir. 2021); Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003) (noting that "[a]n inmate's transfer from the facility complained of generally moots the equitable and declaratory claims").

8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any

conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of *pro se* prisoner litigation, the court must be mindful that a document filed *pro se* is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

- 12 -

### B. Section 1983 Standard

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. §1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## IV. Discussion

### A. Defendant DOC

As noted supra, Plaintiff has named the DOC as a Defendant in the above-captioned action. The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99-100 (1984). "Because the Commonwealth of Pennsylvania's Department of Corrections is part of the executive department of the Commonwealth, ... it shares in the Commonwealth's Eleventh Amendment immunity." Lavia v. Pa. Dep't of Corr., 224 F.3d 190, 195 (3d Cir. 2000). Plaintiff's claims for injunctive relief against the DOC are also barred by the Eleventh Amendment. See Beckett v. Pa. Dep't of Corr., 597 F. App'x 665, 667 (3rd Cir. 2015) (citing Will v. Mich Dep't of State Police, 491 U.S. 58, 71 (1989)). Moreover, the DOC does not qualify as a "person" amenable to suit pursuant to §1983. See Pettaway v. SCI Albion, 487 F. App'x 766, 768 (3d Cir. 2012) (citing Will, 491 U.S. at 71). The Court, therefore, will grant Defendant DOC's motion to dismiss.

### B. Eighth Amendment Claim

Defendants seek dismissal, claiming Wiles failed to establish a violation of the Eighth Amendment. (Doc. 13, pp. 5-8). The Eighth Amendment protects prison inmates from cruel and unusual

punishment. <u>See</u> Farmer v. Brennan, 511 U.S. 825, 832 (1994). However, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. Rhodes v. Chapman, 452 U.S. 337, 349 (1981). To assert an Eighth Amendment conditions of confinement claim, a prisoner must satisfy both an objective and subjective test. <u>See</u> Wilson v. Seiter, 501 U.S. 294, 298 (1991). Specifically, a prisoner must show that the alleged deprivation is "sufficiently serious" and that he has been deprived of the "minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834. A prisoner must also demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials possessed a "sufficiently culpable state of mind" and demonstrated "deliberate indifference" to his health or safety. Id. However, only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement. Hudson v. McMillian, 503 U.S. 1, 8-9 (1992).

Moreover, an Eighth Amendment violation premised upon a failure to protect an inmate from a dangerous physical condition inside a prison, must provide that in this setting:

> Deliberate indifference is comparable to criminal recklessness, and is shown by "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." A defendant "must be both aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." A defendant must have "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." Negligence does not satisfy the "deliberate indifference" standard, and it is not enough to show that a prison guard merely failed to act reasonably. Deliberate indifference can be inferred only where defendants know there is a strong likelihood rather than a mere possibility that violence will occur. Prison officials cannot be expected to eliminate the possibility of all dangers. Thus, the right to reasonable protection does not include the right to protection from random acts.

Barrand v. Donahue, No. 06–694, 2006 WL 2982051, *2 (N.D.Ind.Oct.16, 2006) (citations omitted).

Wiles alleges that Defendants' "actions and inactions" was "with deliberate indifference to Plaintiff's health and safety and contributed to and proximately caused Plaintiff's injuries," wherein Defendants allegedly "repeatedly ignored and failed to correct an obvious and serious danger." (Doc. 1).

As to the subjective prong, Wiles has not established that Defendants were deliberately indifferent to his health or safety. Wiles has not provided any allegation that Defendants were aware that the strapless clog created a potentially hazardous condition and risk of serious harm, or that Defendants deliberately failed to take appropriate action. In fact, Plaintiff's own exhibits demonstrate that Defendants attempted to determine if the use of the clogs

would jeopardize Plaintiff's health and safety. Specifically, Plaintiff's own exhibits demonstrate that Defendants, relying on what was able to be retrieved from Plaintiff's medical record at the time, believed that Plaintiff did not have a medical exemption from wearing the strapless clogs. At most, Plaintiff has alleged that Defendants were negligent, but "negligence does not transform into a constitutional claim solely because it is committed under color of state law." Thomas v. Zinkel, 155 F.Supp.2d 408, 414 (E.D. Pa. 2001) (granting defendants' motion to dismiss where *pro se* plaintiff" use[d] the constitutional code words 'deliberate indifference'" but alleged only that prison officials knew of water leak and should have repaired it); see also Denz v. Clearfield County, 712 F.Supp. 65, 66 (W.D. Pa. 1989) (granting defendant's motion to dismiss where prisoner inserted the phrase "deliberate, willful and wanton" but alleged only that defendant failed to repair his inadequately ventilated cell). Zinkel, 155 F.Supp.2d at 414 (citing Estelle, 429 U.S. at 105-06). Santiago v. Guarini, 2004 WL 2137822, *2 (E.D. Pa. 2004).

Thus, the Plaintiff failed to establish that the deprivation alleged was objectively, sufficiently serious, and that Defendants acted with deliberate indifference to an excessive risk to his health and/or safety as required

by <u>Farmer</u>. Consequently, the Court will grant Defendants' motion to dismiss Plaintiff's Eighth Amendment complaint .

### C. Eighth Amendment Medical Claim

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (internal quotation omitted). To state a claim for such a violation, a plaintiff must allege facts that demonstrate: (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). The first element requires the plaintiff to "make an 'objective' showing that the deprivation was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious." Estate of Thomas v. Fayette Cty., 194 F. Supp. 3d 358, 370 (W.D. Pa. 2016) (quoting Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002)). The second element requires the plaintiff to make a " 'subjective' showing that defendant acted with 'a sufficiently culpable state of mind.' " Id.

A medical need is "serious," in satisfaction of the first prong of the deliberate indifference test, if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person

would easily recognize the necessity for a doctor's attention." Atkinson v. Taylor, 316 F.3d 257, 272–73 (3d Cir. 2003). A medical need is also serious where the denial of treatment would result in the "unnecessary and wanton infliction of pain," Estelle, 429 U.S. at 103, 97 S.Ct. 285, or a "life-long handicap or permanent loss," Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

Deliberate indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990). See also Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) ("deliberate indifference to serious medical needs" standard may be satisfied "[w]here prison authorities deny reasonable requests for medical treatment ... and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury.' ") (brackets and ellipsis in original). But "mere disagreement as to the proper medical treatment" is insufficient to support an Eighth Amendment claim. Monmouth Cty. Corr. Inst, Inmates, 834 F.2d at 346. Thus, "when medical care is provided, we presume that the treatment of a

- 19 -

prisoner is proper absent evidence that it violates professional standards of care." Pearson v. Prison Health Serv., 850 F.3d 526, 535 (3d Cir. 2017) (citing Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990)).

Defendants argue that the Plaintiff fails to allege facts to demonstrate that he suffered from a serious medical need or condition. Although Plaintiff does not provide specifics of his injury, he does state that he "did not have any broken bones" but did "suffer injuries in several areas of the ankle." (Doc. 1). Thus, the few facts that he does allege appear to describe a sprained ankle.

Several federal courts in this circuit and elsewhere have held that injuries like the one described by Wiles do not rise to the level of a serious medical need under Eighth Amendment jurisprudence. See Spillman v. Kollman, 2019 WL 4930141, at *4 (M.D. Pa. Oct. 7, 2019) (Plaintiff's "ankle sprain does not rise to the level of a serious medical need, and thus, he has not met the objective component necessary to establish a violation of the Eighth Amendment."); Johnson v. Criminal Justice Ctr., 2019 WL 1754753, at *2 (E.D. Pa. Apr. 18, 2019) (holding that allegations of "a bruise and ankle sprain requiring no more treatment than ice and ibuprofen" failed to support a serious medical condition under the Eighth Amendment); Bacon v. Harder,

248 F. App'x 759 (7th Cir. 2007) ("Bacon's ankle sprain did not constitute a serious medical need."); Chatin v. Artuz, 28 F. App'x. 9, 10 - 11 (2d Cir. 2001) (summary order) ("[Plaintiff]'s condition, which medical staff at various stages of his treatment diagnosed as a sprained ankle, a bone spur, and a neuroma, did not rise to the level of seriousness that the Eighth Amendment requires."); Johnson v. Kachelmeyer, 2006 WL 625837, at *9 (W.D.N.Y. Mar. 9, 2006) (ankle sprain with several contusions did not "r[i]se to the level of a sufficiently serious medical condition."); Dotson v. Corr. Med. Servs., 584 F. Supp. 2d 1063, 1068 (W.D. Tenn. 2008) ("Plaintiff's ankle sprain does not rise to the level of a serious medical need, and, therefore, he has not met the objective component necessary to establish a violation of the Eighth Amendment") (*aff'd sub nom*. Dotson v. Phillips, 385 F. App'x 468 (6th Cir. 2010)).

However, even assuming that Plaintiff's medical needs were serious in the constitutional sense, the allegations in Plaintiff's complaint and Plaintiff's exhibits clearly demonstrate that Plaintiff received medical attention, and that the attention Plaintiff received lacks the requisite deliberate indifference to support a Section 1983 claim. Thus, Plaintiff's own admission averts any deliberate indifference with respect to treatment for his injury.

Specifically, Plaintiff states that he was seen on at least three occasions by the medical department. Plaintiff received an x-ray, an icepack for swelling and prescribed Tylenol for pain. Additionally, Plaintiff was offered physical therapy/rehabilitation sessions

At best, Plaintiff's complaint demonstrates his disagreement with the type of treatment rendered. This is particularly so in light of the fact that there are no allegations in the complaint that any of the Defendants intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. Farmer; Rouse. To the extent that record demonstrates that Plaintiff has been referred for physical therapy and rehabilitative treatment, shows that Defendants continue to be attentive to Plaintiff's situation. Thus, the allegations in the Plaintiff's complaint amount to nothing more than Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. At most, the allegations in the complaint only rise to the level of mere negligence. As simple negligence cannot serve as a predicate to liability under §1983, Hudson v. Palmer, 468 U.S. 517 (1984), Plaintiff's civil rights complaint fails to articulate an arguable claim. See White, 897 F.2d at 108-110.

## V. LEAVE TO AMEND

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

Here, it is clear from the facts alleged in the *pro se* complaint that any attempt to amend the plaintiff's §1983 claims against the named Defendant would be futile. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Thus, the Court will dismiss the Plaintiff's §1983 claims without leave to amend.

## VI. CONCLUSION

For the reasons set forth above, the Court will grant Defendants' motion to dismiss. (Doc. 12).

A separate Order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: August 26, 2021**
20-1182-01